UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER, et al., Plaintiffs, v. HOSPITALITY PROPERTIES TRUST, Defendant. | Case No. 15-cv-00221-JST<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: ECF No. 60 |
|---|---|

Plaintiffs have brought this putative class action, alleging that Defendant Hospitality Properties Trust ("HPT"), which owns approximately 300 hotels spread across 38 states, has violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* by failing to provide equivalent wheelchair-accessible transportation at its hotels that provide transportation to guests who do not use wheelchairs. Before the Court is Plaintiffs' motion for class certification. ECF No. 60. The motion is denied.

**I.   BACKGROUND**

   **A.   Factual and Procedural Background**

Plaintiff Civil Rights Education and Enforcement Center ("CREEC") is "a nationwide civil rights membership organization based in Denver, Colorado whose mission includes . . . ensuring that persons with disabilities participate in our nation's civic life without discrimination, including in the opportunity to benefit from the services provided by hotels." ECF No. 38 ¶ 9. Each of the Named Plaintiffs (Ann Cupolo-Freeman, Ruthee Goldkorn, and Julie Reiskin) is a member of CREEC, has a disability within the meaning of the ADA, and uses a wheelchair for mobility. Id. ¶¶ 10–12. Each of the Named Plaintiffs "requires a wheelchair accessible vehicle in order to utilize transportation services offered by hotels" and has served as a "tester" of a particular HPT-owned hotel's compliance with ADA requirements regarding wheelchair-accessible transportation.

Id. Defendant HPT is a real estate investment trust ("REIT"), which owns approximately 300 hotels across 38 states, including approximately 37 hotels in California. Id. ¶¶ 2, 13. Approximately 142 of these hotels provide transportation services to guests. ECF No. 60 at 5.

On October 28, 2014, Plaintiff Cupolo-Freeman called the Country Inn & Suites located in Sunnyvale, CA—a hotel owned by HPT which provides its guests with a shuttle to and from the San Jose International Airport—and asked if the hotel provided wheelchair-accessible shuttle services. Id. ¶ 15. She was informed that the hotel does not offer wheelchair-accessible shuttle services. Id. On June 17, 2015, Plaintiff Cupolo-Freeman once again called the Country Inn & Suites and once again was informed that the hotel does not provide a wheelchair-accessible shuttle service. Id. ¶ 17. She was told, however, that the hotel could make arrangements with a taxi company for wheelchair-accessible transportation. Id. Cupolo-Freeman called the taxi company that the hotel used and was told that reservations should be made "at a minimum at least 48 hours in advance to ensure a ride." Id. ¶ 18. She alleges that "[t]he purportedly accessible transportation services are not equivalent to those offered nondisabled guests [because] the accessible transportation services are not offered during the same hours that the inaccessible transportation services are offered; the accessible transportation services require longer advance notice than the inaccessible transportation services; and information concerning the inaccessible shuttle is available on the hotel website, whereas information concerning the accessible shuttle is not." Id. ¶ 19.

On June 23, 2015, Plaintiff Reiskin called a second HPT-owned hotel, the Hyatt Place in Colorado Springs, CO, which provides guests with free local shuttle service to locations within a five-mile radius of the hotel. Id. ¶ 27–28. She was informed that the hotel does not have a wheelchair-accessible shuttle. Id. ¶ 28. She "was told that the hotel could request a local [wheelchair]-accessible taxi for a guest requiring accessible transportation, but that the guest would have to pay for the taxi." Id. She alleges that the hotel's "purportedly accessible transportation services are not equivalent to those offered nondisabled guests [because] guests who use wheelchairs or scooters for mobility must pay for accessible transportation services, whereas nondisabled guests are provided with free transportation services[,] and information concerning

the inaccessible shuttle is available on the hotel website, whereas information concerning the accessible shuttle is not." Id. ¶ 29.

On June 29, 2015, Plaintiff Reiskin called a third HPT-owned hotel, the Staybridge Suites San Francisco Airport, which provides its guests with complimentary shuttle service to and from the San Francisco Airport and to other locations within a five-mile radius of the hotel. Id. ¶¶ 32–33. She was informed that the hotel does not have a wheelchair-accessible shuttle, and that the hotel would need at least two days advance notice to arrange accessible transportation for a guest, whereas nondisabled guests were only required to notify the hotel an hour in advance for the airport shuttle and a day in advance for the non-airport shuttle. Id. ¶¶ 32–33. She alleges that the hotel's "purportedly accessible transportation services are not equivalent to those offered nondisabled guests [because] guests who use wheelchairs or scooters for mobility must provide at least two days advance notice, whereas nondisabled guests need only provide one hour notice for the airport shuttle, and one day notice for the non-airport shuttle; nondisabled guests know in advance that they will not be required to pay for their transportation services, whereas disabled guests do not know whether this will be the case' and information concerning the inaccessible shuttle is available on the hotel website, whereas information concerning the accessible shuttle is not." Id. ¶34.

Finally, on June 24, 2015, Plaintiff Goldkorn called a fourth HPT-owned hotel, the Staybridge Suites San Diego-Sorrento Mesa, which provides guests with free local shuttle service to locations within a five-mile radius of the hotel. Id. ¶ 22. She was similarly informed that the hotel does not offer a wheelchair-accessible shuttle. Id. ¶ 23. She "was told that the hotel could request a local wheelchair-accessible taxi for a guest requiring accessible transportation, but that the guest would have to pay for the taxi." Id. Goldkorn alleges that "[t]he purportedly accessible transportation services are not equivalent to those offered nondisabled guests [because] guests who use wheelchairs or scooters for mobility must pay for accessible transportation services, whereas nondisabled guests are provided with free transportation services." Id. ¶ 24.

Each of the Named Plaintiffs alleges that had the HPT-owned hotel-in-question provided equivalent wheelchair-accessible shuttle services, she intended to stay at the hotel and use those

3

services. Id. ¶¶ 16, 20, 25, 30, 35.  Each of the Named Plaintiffs also alleges that she was deterred from staying at the hotel-in-question by the hotel's lack of equivalent wheelchair-accessible shuttle services.  Id.

On January 15, 2015, Plaintiffs filed their initial Complaint, raising claims under Title III of the ADA, 42 U.S.C. § 12181, *et seq.* and California's Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.*  ECF No. 1.  On August 3, 2015, Plaintiffs filed their First Amended Complaint ("FAC"), raising the same two claims.  ECF No. 38.  The FAC does not seek damages; it seeks only declaratory and injunctive relief.  ECF No. 38 at 13.  On November 13, 2015, Plaintiffs filed a motion seeking to certify a class consisting of:

> Individuals who use wheelchairs or scooters for mobility who, since January 15, 2013, have been, or in the future will be, denied the full and equal enjoyment of transportation services offered to guests at hotels owned and/or operated by Hospitality Properties Trust because of the lack of equivalent accessible transportation services at those hotels.

ECF No. 60 at 14.

### B.     The Americans with Disabilities Act

The ADA was enacted "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(2). Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 944 (9th Cir. 2011).  The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Id. § 12182(a).

The ADA specifically provides that "[i]t shall be considered discrimination for a private entity which operates a fixed route system[1] . . . to purchase or lease a vehicle with a seating capacity in excess of 16 passengers (including the driver) for use on such system . . . that is not readily accessible to and usable by individuals with disabilities, including individuals who use

---

[1] "The term 'fixed route system' means a system of providing transportation of individuals (other than by aircraft) on which a vehicle is operated along a prescribed route according to a fixed schedule." 42 U.S.C. § 12181(4).

4

wheelchairs." Id. § 12182(b)(2)(B)(i).  Moreover, "if a private entity which operates a fixed route system . . . purchases or leases a vehicle with a seating capacity of 16 passengers or less (including the driver) . . . that is not readily accessible to or usable by individuals with disabilities, it shall be considered discrimination for such entity to fail to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities." Id. § 12182(b)(2)(B)(ii).

The ADA also prohibits discrimination with respect to "demand responsive systems."[2]  In this respect, the ADA provides that discrimination includes:

> (i) a failure of a private entity which operates a demand responsive system . . . to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities; and
>
> (ii) the purchase or lease by such entity for use on such system of a vehicle with a seating capacity in excess of 16 passengers (including the driver) . . . that is not readily accessible to and usable by individuals with disabilities (including individuals who use wheelchairs) unless such entity can demonstrate that such system, when viewed in its entirety, provides a level of service to individuals with disabilities equivalent to that provided to individuals without disabilities.

Id. § 12182(b)(2)(C).

## II. JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' first claim for relief arises under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*  The Court has subject matter jurisdiction over Plaintiffs' California Unruh Civil Rights Act claim pursuant to 28 U.S.C. § 1367.

## III. LEGAL STANDARD

Class certification under Rule 23 is a two-step process.  First, Plaintiff must demonstrate that the numerosity, commonality, typicality, and adequacy requirements of 23(a) are met.  "One

---

[2] "The term 'demand responsive system' means any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system." 42 U.S.C. § 12181(3).

1  or more members of a class may sue or be sued as representative parties on behalf of all members
2  only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are
3  questions of law or fact common to the class; (3) the claims or defenses of the representative
4  parties are typical of the claims or defenses of the class; and (4) the representative parties will
5  fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Class certification
6  is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been
7  satisfied." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542–43 (9th Cir. 2013) (quoting
8  Wal–Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). In addition, "[w]hile it is not an
9  enumerated requirement of Rule 23, courts have recognized that "in order to maintain a class
10 action, the class sought to be represented must be adequately defined and clearly ascertainable."
11 Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting
12 DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).

13 Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is
14 met. Here, Plaintiff invokes Rule 23(b)(2), which requires that "the party opposing the class has
15 acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or
16 corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P.
17 23(b)(2). The "class plaintiff has the burden of showing that the requirements of Rule 23(a) are
18 met and that the class is maintainable pursuant to Rule 23(b)." Narouz v. Charter
19 Communications, LLC, 591 F. 3d 1261, 1266 (9th Cir. 2010).

20 **IV.   ANALYSIS**
21    **A. Standing**
22 Before the Court decides whether to certify a class, the Court must determine whether
23 Plaintiffs have Article III standing. "A party invoking federal jurisdiction has the burden of
24 establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the
25 Constitution . . . ." D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir.
26 2008). The case-or-controversy requirement of Article III requires that, in order for a party to
27 have standing to raise a claim: (1) the party invoking federal jurisdiction must have suffered an
28 actual or threatened injury; (2) the injury must be fairly traceable to the defendant's challenged

conduct; and (3) the injury must be redressable. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). An actual or threatened injury requires damages to "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. (internal quotation marks and citations omitted). In addition, to establish standing to pursue injunctive relief in particular, Plaintiffs "must demonstrate a real and immediate threat of repeated injury." Chapman, 631 F.3d at 946 (internal quotation marks omitted). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007).

Here, the parties do not appear to dispute, and the Court finds no reason to doubt, that Plaintiffs' alleged injuries are fairly traceable to defendant's challenged conduct and that the alleged injury is redressable by the Court. The standing analysis thus turns on whether Plaintiffs have suffered an injury-in-fact and whether Plaintiffs have demonstrated a likelihood of future injury sufficient to support injunctive relief.

Plaintiffs argue that each of the Named Plaintiffs has standing to pursue injunctive relief because "(1) they called HPT hotels and were told by the hotels that although they do provide [wheelchair] inaccessible transportation, they do not provide equivalent [wheelchair] accessible transportation [as required by the ADA]; (2) as a result, the [Named] Plaintiffs are deterred from patronizing those hotels; and (3) [the Named Plaintiffs] will patronize the hotels once the hotels provide equivalent accessible transportation . . . ." ECF No. 60 at 11.

"Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way." Chapman, 631 F.3d at 947. Instead, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . ." Id. (quoting Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 n.5 (9th Cir. 2008)). Here, each of the Named Plaintiffs' "initial encounter with accessibility barriers"—their being informed by the HPT-owned hotels that

the hotels did not provide equivalent wheelchair-accessible transportation as the hotels provided to guests who do not use wheelchairs—"constituted an injury-in-fact." Id. at 947–48.

"Although encounters with [] noncompliant barriers related to one's disability," such as the Court has found here, are sufficient to demonstrate an injury-in-fact for standing purposes, a plaintiff seeking injunctive relief must additionally demonstrate 'a sufficient likelihood that he will again be wronged in a similar way.'" Id. at 948 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111(1983)). In this respect, Plaintiffs argue that they have been deterred from patronizing the HPT-owned hotels-in-question and that they will patronize these hotels if, and when, the alleged ADA violations are remedied. ECF No. 60 at 11; ECF No. 38 ¶¶ 16, 20, 25, 30. Because the Ninth Circuit has held that "a plaintiff can demonstrate sufficient injury to pursue injunctive relief when [alleged violations of the ADA] deter him from returning to a noncompliant accommodation," the Court also concludes that the Named Plaintiffs have standing to seek injunctive relief. Chapman, 631 F.3d at 950 (stating that "a plaintiff who is deterred from patronizing a store suffers the ongoing 'actual injury' of lack of access to the store").

Defendant argues that Plaintiffs lack standing because "Plaintiffs admit their status as 'testers' whose sole purpose in attempting to patronize four HPT hotels was to determine whether those hotels provided ADA-compliant shuttle services." ECF No. 64 at 9; see also ECF No. 64 at 12 ("Here, there was and is no organic reason or motive for any of the putative class representatives to visit any of the four hotels that they called."). However, none of the authority cited by Defendants stands for the proposition that a plaintiff's status as a "tester"—or the fact that a plaintiff lacks "organic" motives for visiting an accommodation—defeats a finding of standing in ADA Title III cases.

While the Ninth Circuit has not addressed this precise issue, the Ninth Circuit has held that "testers fall within the protected group of 'any person[s]' that may enforce rights created by § 3604(f)(2) [of the Fair Housing Amendments Act ("FHAA")] when they are violated by discriminatory housing conditions." Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1107 (9th Cir. 2004). In so holding, the Ninth Circuit relied primarily on the fact that section 3604(f)(2) of the FHAA prohibited discrimination "against *any person* in the terms,

8

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . ." Id. at 1102–04. Similarly, here, the ADA provides that "*[n]o individual* shall be discriminated against on the basis of disability," 42 U.S.C. § 12182(a) (emphasis added), and "*any person* who is being subjected to discrimination on the basis of disability" may bring suit, id. § 12188(a)(1) (emphasis added). Moreover, at least two other Circuit Courts have held that a plaintiff's "tester motive . . . does not foreclose standing for his claim under . . . Title III" of the ADA. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1334 (11th Cir. 2013); see also Colorado Cross Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211 (10th Cir. 2014) ("[A]nyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering that invasion.").

The Court thus concludes that the Named Plaintiffs status as "testers" is irrelevant to the standing analysis. Because each of the Named Plaintiffs has met the requirements for standing in ADA Title III cases as outlined by the Ninth Circuit in Chapman, the Court concludes that Plaintiffs have established standing.[3]

### B. Class Certification

#### 1. Rule 23(a) requirements

##### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is

---

[3] The Court finds unpersuasive Defendant's argument that "[e]ven assuming that the individual Plaintiffs have standing to sue and seek injunctive relief against the one or two hotels that each called, that does not mean that they have standing to sue any other hotels" because "Plaintiffs have adduced no evidence that any of them intend to visit any other HPT hotels." ECF No. 64 at 15. As Plaintiffs note, Defendant's argument "conflates standing with the requirements of Rule 23." ECF No. 70 at 9. Defendant cites no authority for the proposition that a Named Plaintiff must establish standing with respect to each of the violations that the plaintiff seeks to remedy on behalf of a class. Rather, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements [for standing with respect to herself]." Bates, 511 F.3d at 985. After a class is certified, "the 'plaintiff' [is] broadened to include the class as a whole, and no longer simply those named in the complaint." Armstrong v. Davis, 275 F.3d 849, 870 (9th Cir. 2001). At that point, "[t]he scope of injunctive relief is dictated by the extent of the violation established" against the entire class. Lewis v. Casey, 518 U.S. 343, 360 (1996) (quoting Califano v. Yamasaki, 442 U.S. 682, 702 (1979)). Accordingly, the Court rejects Defendant's argument.

satisfied if the class comprises 40 or more members." In re Facebook, Inc., PPC Advertising Litig., 282 F.R.D. 446, 452 (N.D. Cal. 2012).  Because Plaintiffs seek only "injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members . . . is sufficient to make joinder impracticable." Arnott v. U.S. Citizenship & Immigration Servs., 290 F.R.D. 579, 586 (C.D. Cal. 2012) (quoting Sueoka v. United States, 101 Fed. App'x 649, 653 (9th Cir. 2004) (memorandum disposition)).

Here, Defendant admits that "roughly 250 guests per year request accessible service" at just one of the 142 HPT-owned hotels that offer transportation to guests.  ECF No. 60 at 17 (citing ECF No. 58-1 at 38).  Given that the number of potential class members that stayed at a single HPT-owned hotel in a single year far exceeds the number of class members that courts typically find satisfies the numerosity requirement, the Court concludes that the numerosity requirement is satisfied here.  Moreover, the fact that the proposed class is geographically dispersed across approximately 29 states, ECF No. 58 ¶¶ 4–5, supports a finding of numerosity.  See Evans v. Linden Research, Inc., No. 11-cv-01078-DMR, 2012 WL 5877579, at *10 (N.D. Cal. Nov. 20, 2012) ("Joinder may be impracticable where a class is geographically dispersed and class members difficult to ascertain or identify.")

### b.  Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do."  Wal-Mart, 131 S. Ct. at 2556 (internal quotation marks omitted).  However, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. at 2551.  "'What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"  Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).  Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class

10

members 'have suffered the same injury,'" which cannot merely be the suffering of "a violation of the same provision of law." Id. (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

Plaintiffs raise several arguments regarding commonality. First, Plaintiffs contend that "HPT's alleged (and admitted) failure to put in place any practices or policies to ensure compliance with ADA hotel transportation regulations creates an issue common to the class." ECF No. 60 at 20. That is, Plaintiffs assert that "HPT's lack of a uniform policy or practice to ensure compliance with the ADA's accessible transportation requirements at its hotels causes harm to the class as a whole, regardless of differences in the specific transportation services offered at any particular hotel." ECF No. 70 at 12.

Defendant responds that because of its status as a REIT, HPT cannot and "does not operate any of the hotels that it owns." ECF No. 64 at 22. That is because

> [a] REIT may directly hire and pay independent contractors to provide services not customarily provided by tenants, but the independent contractor must maintain and operate the facilities through which the services are rendered. If [these] independent contractor requirements are not met, then the independent contractor is disregarded for REIT qualification purposes and the services provided will be considered as having been performed by the REIT.

ECF No. 65-14 (Declaration of James P. de Bree, Jr.) (citing Treasury Regulation § 1.856-4(b)(5)). In other words, if HPT were to "operate" any of its hotels, it would lose the tax advantages of the REIT structure. Hence, HPT's hotels are operated by "management companies" under long-term management agreements. ECF No. 64 at 22. "[W]ith respect to shuttle and transportation services, the Management Companies (not HPT) are responsible for such operations, including any decision about whether to provide such services." Id. Defendants thus argue that "[g]iven different Management Companies and in all likelihood different managers at each hotel, there is no commonality *in HPT's conduct or omissions* here that is relevant to the disposition of this lawsuit." Id.

There are two parts to Defendant's argument. The first is that HPT *cannot* operate the hotels it owns in a manner that provides appropriate, accessible transportation services, because it cannot operate these hotels in *any* respect; otherwise, it would forfeit the tax benefits of the REIT

11

laws.  This argument is not compelling.  If the law required Defendant to develop and implement a policy of affirmatively providing accessible transportation at all of its properties, the availability (or potential loss) of tax benefits to do otherwise would be no defense.  The obligation to avoid discrimination would trump the opportunity to receive a tax-related economic benefit.

There is a second part to Defendant's argument, however, that is more persuasive:  that there is no law requiring the owner of a group of hotels, such as HPT, to have a uniform policy across its hotels ensuring compliance with the ADA, and that in the absence of such a law there is no class-wide issue for adjudication.  HPT acknowledges that each of its hotels must comply with the ADA, and that HPT—as the hotels' owner—is liable if an individual hotel violates that obligation.  But HPT argues that there is no requirement that it maintain and enforce a policy regarding accessible transportation at the REIT level, and Plaintiffs cite no authority imposing one.  Absent such a requirement, it is unclear how HPT's admitted lack of a policy regarding the operation of shuttle or transportation services could serve as the "glue" holding together Plaintiff's claims.  Wal-Mart, 131 S. Ct. at 2552.  Unlike in other cases finding commonality based on a system-wide policy, it is simply not the case here that there exists a policy that "is unlawful as to every [member of the proposed class] or [] is not."  Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014).

Moreover, as in Castenada v. Burger King Corp., 264 F.R.D. 557, 568 (N.D. Cal. 2009), "plaintiffs have failed to make the case that [defendant] has any common offending policies . . . that [resulted in] common accessibility barriers at different [hotels]."  The evidence shows that, while many of Defendant's properties may not be in compliance with the ADA, the manner in which they are potentially out of compliance, and the proof of that non-compliance, differs significantly from property to property.  Because Plaintiffs can point to no common offending policy, proving that each of the 142 hotels violated the ADA would require 142 trials within a trial.  Id.  As the Burger King court noted, in such circumstances, "[e]ach location would vary. . . . Possibly some [locations] would be found to have no violations at all. . . . Litigating [142] in one

case would be impossible without a common method of proof." [4] Id. at 568–69. Such a conclusion strongly counsels against a finding of commonality.

Finally, the cases cited by Plaintiffs in support of their theory of commonality provide little assistance. In each of Plaintiffs' cases, a centralized decision-maker was alleged to have implemented the deficient policies at issue, and in several of the cases the plaintiffs provided concrete evidence of system-wide policies, a showing that Plaintiffs here have failed to make. See, e.g., Gray v. Golden Gate Nat'l Recreational Area, 278 F.R.D. 501, 512 (N.D. Cal. 2011) ("Defendants do not seriously dispute that all of the challenged facilities and barriers are controlled by GGNRA as a centralized decision-maker."); Parsons, 754 F.3d at 681 (This case "involves uniform statewide practices created and overseen by two individuals who are charged by law with ultimate responsibility for health care and other conditions of confinement in all ADC facilities, not a grant of discretion to thousands of managers."); Californians for Disability Rights, Inc. v. Cal. Dep't of Transp., 249 F.R.D. 334, 346 (N.D. Cal. 2008) ("[T]he common question addressed by this lawsuit is whether and to what extent Caltrans has violated the ADA on a 'systematic basis for many years through the use of improper design guidelines and the failure to ensure compliance with even those deficient guidelines.") (emphasis added); Hernandez v. Cty. of Monterey, 305 F.R.D. 132, 157 (N.D. Cal. 2015) (finding commonality based on "systemic and centralized policies or practices in a prison system that allegedly expose[d] all inmates in that system to a substantial risk of serious future harm"). By contrast here, Plaintiffs have not argued that HPT serves in any way as a centralized decision-maker that is required by law to implement uniform policies and practices across the hotels that it owns.

Second, Plaintiffs argue that they have offered "significant proof" that HPT operates under a general policy or practice of discrimination. ECF No. 60 at 20. Plaintiffs contend that they have

---

[4] The Named Plaintiffs' own allegations show that litigating the proposed class's claims would be impossible without conducting 142 mini-trials. While some of the hotels contacted by the Named Plaintiffs are alleged to have not offered any wheelchair-accessible transportation at all, others are alleged to have offered wheelchair-accessible transportation, but required guests to cover the costs. ECF No. 38 ¶¶ 14–36. Still other hotels are alleged to have required at least two days advance notice to arrange wheelchair-accessible transportation for a guest, whereas nondisabled guests were required to provide less notice. Id. ¶¶ 32–33.

submitted evidence through their expert that "more than 90% (128) of the 142 HPT hotels that offer transportation services were violating the ADA transportation regulations."[5] Id. at 21. While "commonality is satisfied where [a] lawsuit challenges a system-wide practice or policy that affects all of the putative class members," Rosas v. Baca, No. 12-cv-00428, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012) (quoting Armstrong, 275 F.3d at 868), Plaintiffs admit that HPT has no system-wide policy relating to Plaintiffs' claims. ECF No. 60 at 21 ("HPT admits that, based on its status as a REIT, it has not even attempted to put in place practices or policies to ensure compliance with ADA transportation regulations."). As a result, even if Plaintiffs were able to show that 90% of HPT's hotels violated the ADA, Plaintiffs would only be able to do so by putting forward evidence regarding each of HPT's 142 hotels individually. Litigating these 142 individual cases within one class action "would be impossible without a common method of proof," which Plaintiffs do not offer. Burger King, 264 F.R.D. at 569.

Third, Plaintiffs argue that "there are a number of issues central to each class member's claim that can be resolved on a classwide basis, most notably concerning the impact, if any, of 26 U.S.C. § 856 and 26 C.F.R. § 1.856-4 -- the REIT tax provisions -- on Defendant's obligations under the ADA." ECF No. 60 at 19. According to Plaintiffs, "Defendant argues that the REIT tax provisions do not allow it to operate or manage its hotels and thus prevent it from ensuring that transportation services at those hotels comply with the ADA." Id. As a result, Plaintiffs claim that each of the proposed class members claims' requires resolution of the same questions,

---

[5] "Plaintiffs, through their expert Dr. Michael Quinn, have called 138 of the 142 HPT hotels that provide transportation services to hotel guests." ECF No. 60 at 6. According to Plaintiffs, these calls provide evidence that 128 of the HPT-owned hotels violated the ADA. Id. For instance, "101 hotels stated during at least one call with Dr. Quinn that they do not provide *any* accessible transportation services." Id. at 8. Eight hotels required guests who need wheelchair-accessible transportation to pay for those services. Id. Another eight hotels required guests who needed wheel-chair accessible transportation to provide more advanced notice than guests who can use inaccessible transportation services. Id. Finally, at least eleven hotels "were able to give specific details about inaccessible transportation services provided by the hotels, but had no idea even what company to call to find accessible transportations services." Id. Defendant argues that the contents of Dr. Quinn's expert report should not be considered by the Court in making its determination on class certification and have moved to exclude the expert testimony. ECF No. 67. The Court need not address Defendant's motion to exclude and strike expert testimony, however, because, as explained above, "even if properly considered, [the expert] testimony does nothing to advance respondents'" claims regarding commonality. Wal-Mart, 131 S. Ct. at 2554.

including: (1) whether "the REIT tax provisions actually cause a real estate investment trust to lose its favorable tax status simply by modifying its hotel practices and procedures to comply with the ADA"; and (2) "If so, is this a defense to claims brought under the ADA?" Id.

As the Court explained earlier, the Court does not believe that the REIT tax provisions provide a defense to a claim of ADA violations. Moreover, Defendant has clarified that "HPT does not contest in this action that an owner [of a hotel, such as HPT,] cannot contract away its ADA obligations to a manager and [the owner] remains jointly and severally liable to disabled plaintiffs" for ADA violations. ECF No. 64 at 24 n.15. That is, Defendant admits that its status as a REIT does not immunize it from liability for ADA violations committed by the hotels that it owns. Rather, Defendant argues that its status as a REIT simply explains why it has implemented no system-wide policy mandating ADA compliance. ECF No. 64 at 24.

The Court concludes that the purportedly common questions posed by Plaintiffs regarding the REIT tax provisions do not support a finding of commonality. Because Defendant admits that it would be liable for ADA violations committed by the hotels it owns, there is no need to answer these questions. Instead, to prevail against Defendant, Plaintiffs would have to show the extent to which each of the allegedly noncompliant HPT-owned hotels violates the ADA.

Mere claims that plaintiffs "have all suffered a violation of the same provision of law" do not support a finding of commonality. Wal-Mart, 131 S. Ct. 2551. Because Plaintiffs have not put forward any common question, the truth or falsity of which "will resolve an issue that is central to the validity of each one of the [plaintiffs'] claims in one stroke," id., the Court concludes that Plaintiffs have failed to establish commonality.

        **c.    Typicality**

Defendant next challenges whether the proposed class meets the typicality requirement. In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably

15

coextensive with those of absent class members; they need not be substantially identical." Parsons, 754 F.3d at 685 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the Named Plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Hanon, 976 F.2d at 508).

"The commonality and typicality requirements of Rule 23(a) tend to merge." Falcon, 457 U.S. 146, 157 n. 13. Here, the Court has already concluded that Plaintiffs have failed to identify any HPT policy across the 142 allegedly ADA-noncompliant hotels, which policy could support a finding of commonality. Because the 142 individual hotels are not alleged to have operated under a common policy, each of the Named Plaintiffs here "have suffered different injuries than those suffered by purported class members who encountered different [ADA violations] at other [HPT-owned hotels] that the named plaintiffs did not visit." Burger King, 264 F.R.D. 571–72. By contrast, the cases cited by Plaintiff finding typicality where plaintiffs alleged violations of the ADA across many locations each involved an alleged common policy or practice instituted by a single defendant operating each of the accommodations in question. See Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 445 (N.D. Cal. 1994) (Plaintiffs alleged that "defendant has been engaging in a policy and practice of failing to include wheelchair seating [at the more than 70 theaters operated by defendant] that complies with the ADAAG requirements."); Park v. Ralph's Grocery Co., 254 F.R.D. 112, 120 (C.D. Cal. 2008) (Plaintiffs alleged that "defendant's inadequate 'Disabled Patrons' policy and/or lack of required policies, all result from a centralized decision-making process."). Plaintiffs' claims therefore do not satisfy the typicality requirement.

### d. Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the Named Plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the Named Plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). Among other functions, the requirement serves as a way to determine whether "the Named Plaintiff's

claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13.

Defendant does not specifically argue that Plaintiffs and their counsel fail to meet Rule 23(a)(4)'s adequacy requirement. Plaintiffs argue that "[n]either the Plaintiffs nor their counsel has conflicts of interest with the proposed class," especially given that "[n]one of the [Named Plaintiffs] seeks any monetary damages." ECF No. 60 at 22. Plaintiffs also assert that the proposed class counsel will vigorously prosecute this action on behalf of the class just as they "have litigated dozens of class actions [before], including numerous class actions under the ADA . . . ." Id. at 23. Plaintiffs further claim that "[t]hey have the resources to litigate this case, as they have done with numerous similar class actions in the past." Id. Nothing in the record suggests, and Defendant does not argue, otherwise. Accordingly, Plaintiffs have satisfied the adequacy requirement.

### e. Ascertainability

"[C]ourts addressing motions to certify classes under Rule 23(b)(3) have held that 'apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists.'" In re Yahoo Mail Litig., 308 F.R.D. 577, 596 (N.D. Cal. 2015) (citing Sethavanish v. ZonePerfect Nutrition Co., No. 12-cv-2907, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014)). Some courts in this district, however, have held that "the ascertainability requirement does not apply to Rule 23(b)(2) actions." Id. at 597. The Court need not address whether the ascertainability requirement applies to Rule 23(b)(2) actions, such as this one, because Defendants merely argue that Plaintiffs have not "provide[d] a clear class definition under Rule 23(c)(1)(B).'" ECF No. 64 at 28 (citing In re Yahoo Mail Litig., 308 F.R.D. at 597–98).

Pursuant to Fed. R. Civ. P. 23(c)(1)(B), "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses. . . ." Plaintiffs propose defining a class consisting of:

> Individuals who use wheelchairs or scooters for mobility who, since January 15, 2013, have been, or in the future will be, denied the full and equal enjoyment of transportation services offered to guests at

17

> hotels owned and/or operated by Hospitality Properties Trust because of the lack of equivalent accessible transportation services at those hotels.

ECF No. 60 at 14. Defendant argues that "[w]hile it may be easy to define and identify individuals who use wheelchair or scooters, it is a far different story to identify which of these individuals have experienced difficulties with accessible transportation services *at HPT hotels* or when." EC No. 64 at 29. Defendant further argues that "aside from the three test Plaintiffs, whose 'difficulties' were well-engineered by CREEC, Plaintiffs have failed to identify even a single putative class member who has experienced any difficulties with transportation services at a HPT hotel." Id.

Defendant's arguments are unpersuasive. Defendant fails to cite any case in which similar class definitions were found to be insufficiently clear under Rule 23(c)(1)(B). By contrast, the In re Yahoo Mail Litig. court found the following proposed class to be sufficiently clear under that Rule: "all persons in the United States who are not Yahoo Mail subscribers and who have sent emails to or received emails from a Yahoo Mail subscriber from October 2, 2011 to the present, or who will send emails to or receive emails from a Yahoo Mail subscriber in the future." 308 F.R.D. at 598. The Court concludes that Plaintiffs' proposed class definition here is no less clear than the class definition in In re Yahoo Mail Litig. Accordingly, Plaintiffs' proposed class definition is sufficiently clear under Rule 23(c)(1)(B).

### 2. Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." Wal-Mart, 131 S.Ct. at 2557. "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." Parsons, 754 F.3d at 688 (citing Rodriguez v.

18

Hayes, 591 F.3d 1105, 1125 (9th Cir. 2011)). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." Id. "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2009).

Plaintiffs argue that HPT has "refused to act on grounds that apply generally to the class" because "HPT has a practice of not providing equivalent accessible transportation services at hotels it owns." ECF No. 60 at 24. Plaintiffs further contend that "[c]ourts routinely certify Rule 23(b)(2) classes where defendants fail to implement uniform policies or practices to comply with the law, even though the specific legal violations may be manifested in different ways with respect to different class members or locations." ECF No. 70 at 10. Plaintiffs suggest that the Court could "issue an injunction requiring HPT to comply with the ADA at its properties." ECF No. 70 at 12.

Such an injunction does not constitute "final injunctive relief or corresponding declaratory relief [that] is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To satisfy Rule 23(b)(2), the proposed injunction must be "more specific than a bare injunction to follow the law." Parsons, 754 F.3d 657, 689 n. 35 (9th Cir. 2014). However, Plaintiffs have suggested just that. ECF No. 70 at 12. Moreover, as was the case in Burger King:

> [F]inal common injunctive relief would only be appropriate as to those [locations] where there are in fact accessibility violations, and the relief would even then vary from location to location. . . . [T]he actual injunctive relief ordered must be individually fashioned for each location. . . . Because every [location] will have different violations, any ordered injunctive relief will primarily need to be tailored [location-by-location].

264 F.R.D. at 569. Accordingly, the Court concludes that "[t]here can be no 'generally applicable' relief in this case as to patrons of *all* [142 hotels]." Id. Plaintiffs have thus failed to establish the requirements of Rule 23(b)(2).

**CONCLUSION**

Plaintiffs have standing to bring their claims under Title III of the ADA against HPT. The Court concludes, however, that Plaintiffs have failed to satisfy the commonality and typicality requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2). Accordingly, the Court denies Plaintiffs' motion for class certification.

The Court sets a further Case Management Conference on June 1, 2016 at 2:00 p.m. A Joint Case Management Statement is due ten court days beforehand.

IT IS SO ORDERED.

Dated:  April 15, 2016

                                          JON S. TIGAR
                                          United States District Judge