UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN CUPOLO-FREEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOSPITALITY PROPERTIES TRUST, <br><br> Defendant. | Case No. 15-cv-00221-JST <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: ECF No. 129 |

Before the Court is Defendant Hospitality Properties Trust's motion for summary judgment. ECF No. 129. The Court will deny the motion.[1]

## I. BACKGROUND

Plaintiffs Ann Cupolo-Freeman, Ruthee Goldkorn, and Julie Reiskin are disabled individuals who use wheelchairs for mobility. They, along with the Civil Rights Education and Enforcement Center ("CREEC"), filed this putative class action against Defendant Hospitality Properties Trust ("HPT"), contending that HPT violated the Americans with Disabilities Act ("ADA") by failing to provide accessible transportation services at the hotels it owns. CREEC subsequently dismissed all of its claims with prejudice. ECF No. 97.

The Court found that Plaintiffs had standing to bring this action but denied Plaintiffs' motion for class certification based on a lack of commonality and typicality and a failure to comply with the requirements of Federal Rule of Civil Procedure 23(b)(2). ECF No. 88. Plaintiffs appealed the Court's decision, and the Ninth Circuit agreed to hear the appeal under Federal Rule of Civil Procedure 23(f). ECF No. 102. The Ninth Circuit affirmed both the Court's

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the matter suitable for disposition without oral argument.

determination on standing and its "finding that the plaintiffs failed to meet Rule 23's commonality requirement, given the lack of consistent policies or practices across the hotels owned by defendant Hospitality Properties Trust ('HPT'), but operated by others." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1096 (9th Cir. 2017) ("*CREEC*"). The court did not reach the issues of typicality or the requirements of Rule 23(b)(2). *Id.* at 1106.

The Ninth Circuit described the basic facts of this case, which no party disputes:

> HPT is a real estate investment trust ("REIT") that owns hotels across the United States. REITs are vehicles for investors to own a fraction of a group of real estate holdings. Under federal statute, REITs are exempt from taxation on corporate profits; shareholders are taxed only when they receive dividends. 26 U.S.C. §§ 856-859. To avoid taxation at the corporate level, REITs must, among other things, remain passive investors and delegate the management of particular facilities. *Id.* § 856(d)(7).
>
> Named Plaintiffs Ann Cupolo-Freeman, Ruthee Goldkorn, and Julie Reiskin ("Named Plaintiffs") are physically disabled and use wheelchairs for mobility. Cupolo-Freeman and Goldkorn reside in California, while Reiskin lives in Colorado. Each phoned an HPT-owned hotel located in her state of residence that provided free local shuttle services, and each was informed that the hotel at issue did not provide equivalent shuttle service for mobility-impaired people. Each alleges that she would have stayed at the hotel she called but for its failure to provide equivalent shuttle service. In addition, each alleges that she still intends to stay at the hotel, but that its failure to provide equivalent shuttle service deters her from doing so at present.

*Id.* at 1096-97 (footnote omitted).

The court further explained that HPT "owns some 302 hotels across the United States" but "does not itself operate the hotels." *Id.* at 1103. Instead, it "employs various professional management companies . . . to operate the hotels it owns." *Id.* HPT's agreements with those companies require compliance with all laws, but provide that "the management companies 'shall have sole, exclusive and uninterrupted control over the operation of the Hotels.' . . . Thus, it is the management companies, not HPT, that decide whether to offer local transportation services and that set the terms on which those services operate." *Id.* at 1104.

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or

2

leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A hotel is a public accommodation. 42 U.S.C. § 12181(7)(A).

Section 12182(b)(2) lists "[s]pecific prohibitions," including the two at issue in this case:

(B) Fixed route system

(i) Accessibility

It shall be considered discrimination for a private entity which operates a fixed route system and which is not subject to section 12184 of this title to purchase or lease a vehicle with a seating capacity in excess of 16 passengers (including the driver) for use on such system, for which a solicitation is made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(ii) Equivalent service

If a private entity which operates a fixed route system and which is not subject to section 12184 of this title purchases or leases a vehicle with a seating capacity of 16 passengers or less (including the driver) for use on such system after the effective date of this subparagraph that is not readily accessible to or usable by individuals with disabilities, it shall be considered discrimination for such entity to fail to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities.

(C) Demand responsive system

For purposes of subsection (a) of this section, discrimination includes –

(i) a failure of a private entity which operates a demand responsive system and which is not subject to section 12184 of this title to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities; and

(ii) the purchase or lease by such entity for use on such system of a vehicle with a seating capacity in excess of 16 passengers (including the driver), for which solicitations are made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities (including individuals who use wheelchairs) unless such entity can demonstrate that such system, when viewed in its entirety, provides a level of service to individuals with disabilities equivalent to that provided to individuals without disabilities.

42 U.S.C. § 12182(b)(2)(B)-(C) ("Transportation Provisions").[2] A "fixed route system" is "a system of providing transportation of individuals (other than by aircraft) on which a vehicle is operated along a prescribed route according to a fixed schedule." 42 U.S.C. § 12181(4). A "demand responsive system" is "any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system." 42 U.S.C. § 12181(3).

HPT contends that the manner in which its hotels are managed – through agreements that give management companies sole control over the hotels' operation – precludes any finding of liability in this case. Specifically, HPT argues that the Transportation Provisions do not apply to it because it is not "a private entity which operates" a fixed route or demand responsive system. 42 U.S.C. § 12182(b)(2)(B)-(C). Although HPT raised this argument on appeal, the Ninth Circuit did not reach it for two reasons: "First, this issue is not before us, because it goes to the merits, not the issue of class certification. Second, even if this argument were to bear on class certification, we need not reach it because we affirm the district court on other grounds." *CREEC*, 867 F.3d at 1106 n.5. HPT now asks this Court to decide the question in its favor on summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255.

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

---

[2] Section 12184 applies to private entities that are "primarily engaged in the business of transporting people and whose operations affect commerce" and is not at issue in this case. 42 U.S.C. § 12184(a).

4

480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. DISCUSSION

It appears that the scope of liability under the Transportation Provisions has only been directly considered by one other court.[3] In *Civil Rights Education and Enforcement Center v. Sage Hospitality Resources, LLC*, the district court concluded that the term "private entity" was "consistent with, and not distinct from 'a place of public accommodation' identified in Section 12182(a). Thus, a properly named defendant alleged to have discriminated against a plaintiff in violation of these provisions would be an owner, lessor, lessee, or operator of the 'private entity' identified in subsections 12182(b)(2)(B) & (C)." 222 F. Supp. 3d 934, 949 (D. Colo. 2016). The court clarified that the "private entities" to which it referred were the hotels themselves.[4] *Id.*

---

[3] Plaintiffs brought two other cases regarding inaccessible hotel shuttles, naming as defendants the REITs that owned the hotels, but both cases settled without litigation over liability. In one case, the REIT "acknowledge[d] that it could be found statutorily liable in the event of an ADA violation." *Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Tr., Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950, at *4 (N.D. Cal. Mar. 22, 2016). In the other, the court signed the parties' proposed order, which noted that the Department of Transportation "regulations broadly define 'operate' to include 'the provision of transportation service by a public or private entity itself or by a person under a contractual or other arrangement or relationship with the entity,'" and that "[t]he ADA explicitly prohibits covered entities such as RLJ [the REIT] from 'directly, or through contractual, licensing, or other arrangements,' engaging in actions otherwise prohibited by title III." *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-cv-0224-YGR, 2016 WL 314400, at *1 (N.D. Cal. Jan. 25, 2016) (quoting 49 C.F.R. § 37.3 and 42 U.S.C. § 12182(b)(1)(A)(i)).

[4] HPT is incorrect when it argues that, under *Sage*, "it is beyond dispute that HPT does not own the 'private entities' that operate the transportation services." ECF No. 135 at 11 (emphasis in original). To the contrary, the "private entities" under *Sage* are the hotels themselves, and it is not disputed that HPT *does* own those entities. The *Sage* court considered whether the defendants operated the hotels at issue in that case because that was the only potential source of liability; the

5

(noting that it was undisputed that the two hotels at issue "are private entities and places of public accommodation that provide transportation services via fixed route or demand responsive systems," and therefore moving on to "determine whether there exist genuine issues of material fact as to whether [defendants] are owners, lessors, lessees, or operators of the hotels"). In reaching its conclusion, the court emphasized that the ADA's definition of "public accommodation" refers to a list of "private entities," including hotels. *Id.* (citing 42 U.S.C. § 12181(7)(A)).

Another district court reached a similar conclusion, although the scope of who would be liable under the Transportation Provisions was not directly before it. In *J.H. by & through Holman v. Just for Kids, Inc.*, the court considered whether 42 U.S.C. § 12182 covered transportation systems not connected with a place of public accommodation. 248 F. Supp. 3d 1210 (D. Utah 2017). In concluding that it did not, the court interpreted § 12182 as "prohibit[ing] discrimination in the administration of transportation systems operated by a place of public accommodation or by a private entity that owns, leases, or operates a place of public accommodation, such as a shuttle service operated by a hotel." *Id.*

This statutory interpretation has some appeal. The ADA's legislative history indicates that the Transportation Provisions were intended to cover, "for example, a business that runs a shuttle service on the side for its customers or a *hotel* that runs a transportation service for its patrons." 136 Cong. Rec. E1913-01, E1919, 1990 WL 80290 (July 12, 1990) (statement of Rep. Hoyer) (emphasis added); *see also* H.R. Rep. No. 101-485, at 116 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 399 ("For example, where a *hotel* at an airport provides free shuttle service, the *hotel* need not purchase new vehicles that are accessible so long as it makes alternative equivalent [arrangements] for transporting people with disabilities who cannot ride the inaccessible vehicles." (emphasis added)). Likewise, the Department of Transportation ("DOT") regulations implementing the Transportation Provisions provide that: "Shuttle systems and other

---

plaintiffs did not contend that the defendants owned, leased, or leased to the hotels. *Sage*, 222 F. Supp. 3d at 949-53 (applying definition of "operate" adopted by *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995)).

6

transportation services *operated by privately-owned hotels*, car rental agencies, historical or theme parks, and other public accommodations are subject to the requirements of this part for private entities not primarily engaged in the business of transporting people." 49 C.F.R. § 37.37(b) (emphasis added). And the Department of Justice's ADA Title III Technical Assistance Manual refers to "*[p]ublic accommodations that provide transportation*," and gives as an example "airport shuttle services *operated by hotels*." Americans with Disabilities Act Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities § III-4.4700, *available at* https://www.ada.gov/taman3.html (emphasis added).

However, the Ninth Circuit has noted the ADA's "awkward drafting" in defining "public accommodation" by listing a number of types of "private entities [to be] considered public accommodations." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 874 (9th Cir. 2004); 42 U.S.C. § 12181(7). The issue in that case was whether a publicly owned stadium is a public accommodation subject to Title III of the ADA if it is operated by a private entity. The defendants argued "that § 12181(7)(C) must be read as if it provided that 'a stadium is considered a public accommodation if it is a private entity,'" and that a publicly owned stadium cannot be a public accommodation. *Id.* at 874. In considering this question, the court explained that "[s]tadiums and 'other place[s] of exhibition or entertainment,' *see* 42 U.S.C. § 12181(7)(C), are never '*entities*,' private or public." *Id.* (emphasis in original). Instead, a stadium is "a physical location or facility. To make sense of the statute, there must be some relationship *between* the private entity and the 'place of exhibition or entertainment' to which access is sought." *Id.* at 874-75 (emphasis in original) (footnote omitted). The same reasoning would appear to apply to hotels and other "place[s] of lodging" that constitute public accommodations under 42 U.S.C. § 12181(7)(A) – i.e., that they are physical locations or facilities and not entities. Thus, the Court cannot conclude that "private entity" in the Transportation Provisions should be construed as referring to the hotels themselves.

Nonetheless, use of the word "operates" in the Transportation Provisions does not exclude HPT from liability. Title III is silent on the meaning of "operate," both in the context of operating a public accommodation and operating a fixed route or demand responsive system. In the context

7

of who "operates a place of public accommodation" under 42 U.S.C. § 12182(a), the Ninth Circuit has adopted the Fifth Circuit's interpretation from *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995): "Specifically, 'to operate' means 'to put or keep in operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'" *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004). HPT urges the Court to apply the same definition of "operates" to the Transportation Provisions and correctly cites the general rule that "identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). But, here, there is reason to depart from the general rule. The *Neff* court "construed ['operates'] in accord with its ordinary and natural meaning" only "[b]ecause the ADA does not define the term" in the context of operating a public accommodation. *Neff*, 58 F.3d at 1066 (internal quotation marks and citation omitted). The parties have also identified no regulations implementing the ADA that define what it means to operate a place of public accommodation. In the context of operating a fixed route system or demand responsive system, however, Title II of the ADA contains the following definition: "The term 'operates', as used with respect to a fixed route system or demand responsive system, includes operation of such system by a person under a contractual or other arrangement or relationship with a public entity."[5] 42 U.S.C. § 12141(4). This is some indication of Congressional intent as to the meaning of "operates" in the context of fixed route and demand responsive transportation systems.

In addition, the ADA specifically tasked the DOT with issuing regulations to carry out the Transportation Provisions. 42 U.S.C. § 12186(a)(1). These regulations provide that: "Operates

---

[5] Similar to the Transportation Provisions in Title III, Title II prohibits "a public entity which operates a fixed route system" from purchasing or leasing vehicles that are "not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12142(a). It also prohibits "a public entity [which] operates a demand responsive system" from purchasing or leasing new vehicles that are "not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless such system, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service such system provides to individuals without disabilities." 42 U.S.C. § 12144. The Transportation Provisions contain identical language, except that they apply only to vehicles "with a seating capacity in excess of 16 passengers (including the driver)." 42 U.S.C. § 12182(b)(2)(B)(i) (fixed route system); 42 U.S.C. § 12182(b)(2)(C)(ii) (demand responsive system).

includes, with respect to a fixed route or demand responsive system, the provision of transportation service by a public or private entity itself or by a person under a contractual or other arrangement or relationship with the entity." 49 C.F.R. § 37.3. Where, as here, "'the statute is silent or ambiguous with respect to the specific issue,' the court must defer to 'the agency's answer [if it] is based on a permissible construction of the statute.'" *Disabled Rights Action Comm.*, 375 F.3d at 876 (alteration in original) (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). Although HPT argues that it is not liable under the DOT regulation, it does not argue that the DOT's interpretation is in any way impermissible. To the contrary, the DOT's interpretation is consistent with Title II's statutory definition of "operates" in the context of fixed route and demand responsive systems, thus ensuring that the phrases "operates a fixed route system" and "operates a demand responsive system" are interpreted consistently throughout the ADA. Accordingly, the Court defers to the DOT regulation and concludes that the Transportation Provisions apply to any private entity that provides transportation service "itself or by a person under a contractual or other arrangement or relationship with the entity." 49 C.F.R. § 37.3.

HPT contends that it does not fit within this definition, but the Court disagrees. According to HPT's president and chief executive officer, HPT has entered into management agreements with a number of companies that "control, manage, and direct all operations, policies and procedures at HPT's owned hotels." ECF No. 129-2 ¶ 6. "With respect to shuttle and transportation services at HPT's owned hotels, the Management Companies are responsible for any such services, including deciding whether to provide such services and, if provided, determining the scope and manner of services." *Id.* ¶ 10. HPT argues that the management companies, and not HPT, are therefore liable under the Transportation Provisions as the entities that provide transportation services. But what HPT's position fails to acknowledge is that the management companies only have authority to provide transportation services because of their agreements with HPT. Absent those agreements, the management companies would have no authority to provide any services, including transportation services, at HPT-owned hotels. Thus, the management companies provide transportation services "under a contractual or other

1    arrangement or relationship with" HPT, and HPT therefore "operates" those services under the
2    DOT regulation's definition. 49 C.F.R. § 37.3.

3         HPT argues that the "contractual or other arrangement or relationship with the entity" must
4    be specific to the transportation services – i.e., that for HPT to be liable, it must have a contract
5    with an entity specifically to provide transportation services. But nothing in the statute or the
6    regulations is so limiting, and courts are to "reject restrictive interpretations of the ADA."
7    *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1011 (9th Cir. 2017). Instead, courts
8    must "construe the language of the ADA broadly to advance its remedial purpose," which is "to
9    provide a clear and comprehensive national mandate for the elimination of discrimination against
10   individuals with disabilities" and "to provide clear, strong, consistent enforceable standards
11   addressing discrimination against individuals with disabilities." *Cohen v. City of Culver City*, 754
12   F.3d 690, 695 (9th Cir. 2014); 42 U.S.C. § 1201(b)(1)-(2). Interpreting "contractual or other
13   arrangement or relationship with the entity" to include arrangements or relationships that delegate
14   operational control, even if transportation services are not specifically mentioned, advances the
15   ADA's broad remedial purpose.

16        Because the Court finds no disputed fact as to HPT's liability as an "operator" of the
17   transportation systems as defined by the DOT regulation, it does not reach HPT's arguments
18   concerning whether an owner of a public accommodation that does not also "operate" a
19   transportation system can be held liable for failing to comply with the Transportation Provisions.
20   Nor does the Court reach Plaintiffs' argument that HPT is judicially estopped from taking that
21   position based on its previous concession that it "does not contest in this action that an owner
22   cannot contract away its ADA obligations to a manager and remains jointly and severally liable to
23   disabled plaintiffs." ECF No. 64 at 31 n.15 (citing 42 U.S.C. §§ 12182(a), 12182(b)(D)).
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

**CONCLUSION**

HPT's motion for summary judgment is denied. The parties shall appear for a case management conference on April 3, 2019, at 2:00 p.m., and file a joint case management statement on or before March 27, 2019.

**IT IS SO ORDERED.**

Dated: February 26, 2019



JON S. TIGAR
United States District Judge